**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
Docket No. 25-CR-256 (JMB)

---

UNITED STATES OF AMERICA,

Plaintiff,

vs.

AMIIR MAWLID ALI,

Defendant.

---

**DEFENDANT'S POSITION REGARDING SENTENCING**

The Defendant, Amiir Mawlid Ali, through his attorneys Eric J. Nelson and Julia A. Forbes, Halberg Criminal Defense, respectfully moves this Court to recognize the policies embodied in the Federal Sentencing Guidelines, as well as those enumerated at 18 U.S.C. § 3553(a), to sentence Mr. Ali to time served, followed by a supervised release period of not more than three years. Accordingly, the Defense submits the following.

## I. PROCEDURAL FACTS AND PRESENTENCE INVESTIGATION

On July 1, 2025, Amiir Mawlid Ali was charged with unlawful possession of a machinegun in a one-count indictment alleging violation of 18 U.S.C. § 922(o)(1). (PSR at ¶ 1). On April 15, 2026, Mr. Ali was found guilty of the charged offense after a jury trial. (PSR at ¶ 2). A final presentence investigation report (PSR) was prepared and filed on August 26, 2026. (PSR at 2). The PSR calculated Mr. Ali's

criminal history score to be 0, which places him in criminal history category I. (PSR at ¶ 30).

The parties agree that count I, unlawful possession of a machinegun, in violation of 18 U.S.C. § 922(o)(1), carries a base offense level of eighteen (18). (PSR at ¶ 18); *see* U.S.S.G. § 2K2.1. The Government argues, and the PSR writer appears to agree, that a two-level enhancement should be applied, pursuant to U.S.S.G. § 2K2.1(b)(4)(A), because the offense allegedly involved a stolen firearm. (PSR at ¶ 18). The Defense agrees that the total offense level is twenty (20). (PSR at ¶ 25).

The parties further agree that any sentence should be adjusted to reflect credit for Mr. Ali's time in custody dating back to June 9, 2025, pursuant to U.S.S.G. § 5G1.3(b)(1). (PSR at 33).

With a total offense level of twenty (20), the Guidelines range is 33 to 41 months. U.S.S.G. § 5A. The Defense submits that, pursuant to 18 U.S.C. § 3553(a), the need to avoid disparities in sentencing, and in light of the considerable mitigating circumstances in this case, the Court should sentence Mr. Ali to time served followed by three years of supervised release. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a)(2); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

## II. APPLICABLE SENTENCING PRINCIPLES AND CONSIDERATIONS

The longstanding principle that "the punishment should fit the offender and not merely the crime" is codified at 18 U.S.C. § 3661. Under that provision, "[n]o limitation shall be placed on the information" that a sentencing court may take into account when "considering the [defendant's] background, character and conduct." *See Williams v. New York*, 337 U.S. 241, 247 (1949). This principle is also expressly incorporated in the United States Sentencing Guidelines at section 1B1.4:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.

Although a sentencing court must "give respectful consideration to the Guidelines… [it is permitted to] tailor the sentence in light of other statutory concerns as well." *Kimbrough*, 552 U.S. at 101 (referencing post-*Booker*[1] opinions which reiterate that the Federal Sentencing Guidelines are advisory only). "[T]he district court is free to make its own reasonable application of the [section] 3553(a) factors and to reject (after due consideration) the advice of the Guidelines." *Id.* at 113 (Scalia, J., concurring).

Thus, every federal sentencing case involves application of 18 U.S.C. § 3553(a), and this Court has no doubt seen and recited the relevant portions of that

[1] *United States v. Booker*, 543 U.S. 220 (2005).

statute dozens, if not hundreds, of times. Nevertheless, it is worth emphasizing the fundamental mandate of the statute: The sentence imposed on a person must be "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

To determine what sentence is sufficient, but not greater than necessary, the Court considers the sentencing factors set forth in section 3553(a), summarized as follows:

> (1) the offense and the person being sentenced;
> (2) the need for the sentence to provide just punishment, adequate deterrence, protection of the public, and appropriate treatment for the defendant;
> (3) the kinds of sentences available;
> (4) the Guidelines range for the defendant;
> (5) pertinent policy statements of the Guidelines;
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar misconduct; and
> (7) the need to provide restitution to any victims.

The applicable Guidelines range generally provides a starting point from which to begin the sentencing process because it encompasses many facets of the individual defendant, such as criminal history, the circumstances of the crime, and any relevant offense conduct.

### A. Guidelines range for the Defendant's offenses and sentencing data.

The Guidelines range is determined by a defendant's criminal history and the calculated offense level. In this case, the Guidelines, among other factors, account for the elements of the offenses, including any injury or financial loss suffered by the victims. Here, Mr. Ali's guidelines range is 33 to 41 months of imprisonment. *See* section I, *supra*.

As the Supreme Court has explained, there are two reasons why it is generally fair to assume that the Guidelines reflect a rough approximation of sentences that "might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). First, the original Sentencing Commission used an approach that began "with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past." *Id.* Second, the Commission can review and revise the Guidelines based on judicial feedback, through review of sentencing decisions, and by consultation with experts. *Id.* For these reasons, federal sentences are often imposed within the applicable guidelines range—and are routinely affirmed as "reasonable" on appeal. However, for many types of offenses, below-guidelines sentences are (or have become) the norm.

In fashioning the "sufficient, but not greater than necessary" sentence for Mr. Ali, this Court may consider whether the Guidelines range exemplifies the Sentencing Commission's "exercise of its characteristic institutional role… to

formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108-09; *Rita*, 551 U.S. at 349-50. Here, Mr. Ali is asking for a sentence no longer than time served because of his already-lengthy incarceration, young age, lack of prior criminal history, and the circumstances surrounding his offenses.

### B. The nature and circumstances of the offense, and the history and characteristics of the Defendant.

In sentencing Mr. Ali, this Court is required by law to impose a sentence that is "sufficient, but not greater than necessary" to comply with the sentencing goals enumerated in 18 U.S.C. § 3553(a). *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)(2)). Those goals are: "[First,] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [second,] to afford adequate deterrence to criminal conduct; [third,] to protect the public from further crimes of the defendant; and [fourth,] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2); *see also Kimbrough*, 552 U.S. at 101.

> The statute further provides that, in determining the appropriate sentence, the court should consider . . . 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'

*Kimbrough*, 552 U.S. at 101 (internal citations omitted).

The Defense urges the Court, in crafting its "sufficient" sentence, not to view Mr. Ali solely in relation to the crime he committed and for which he has been convicted.

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). It is the position of the Defense that Mr. Ali's personal characteristics, as well as the circumstances surrounding his offense—before and after—should mitigate "the punishment to ensue."

*i. Mr. Ali's personal characteristics*

The Presentence Investigation Report contains a more complete description of Mr. Ali's background. Facts relevant for the Court's consideration are contained herein. Mr. Ali is 20 years old. (PSR at p. 4, ¶ 35). He was born in Seattle, Washington as the youngest of eight children, and his family relocated to Minnesota following his birth. (PSR at p. 5, ¶ 36). He grew up in a dysfunctional household in which his father consumed alcohol in excess. (PSR at p. 5, ¶ 36). Mr. Ali witnessed verbal abuse between his parents. (PSR at p. 5, ¶ 36). His father subjected him to physical neglect and physical abuse, including punching and pinching him. (PSR at

p. 5, ¶ 36). This environment caused Mr. Ali to distance himself from his father. (PSR at p. 5, ¶ 36).

At age seven, Mr. Ali's parents separated, and he lived with his mother. (PSR at p. 5, ¶ 37). They moved to San Diego, California, where they experienced financial hardship and struggled to pay for food. (PSR at p. 5, ¶ 37). During this time, Mr. Ali found discipline in basketball. (PSR at p. 5, ¶ 37). The family returned to Minnesota to care for his sick grandmother. (PSR at p. 5, ¶ 38). Mr. Ali experienced instability during his adolescent years. His family moved between suburbs, forcing him to attend multiple high schools in different districts. (PSR at p. 5, ¶ 38).

Despite these disruptions, Mr. Ali demonstrated educational resilience. He transitioned to an internet school for his twelfth-grade year due to household stress. (PSR at p. 5, ¶ 38). He achieved a 3.85 grade point average and graduated from Penn Foster High School in June 2025. (PSR at p. 7, ¶ 49). He expressed a desire to pursue higher education in business or biology. (PSR at p. 8, ¶ 51).

Mr. Ali has endured compounding trauma. He completed an adverse childhood experiences assessment, resulting in a score of five. (PSR at p. 7, ¶ 47). This score indicates elevated risks for negative behavioral outcomes. (PSR at p. 7, ¶ 46). His mother suffers from a physical disability caused by a bullet lodged in her back, an injury sustained in Somalia. (PSR at p. 5, ¶ 35). Mr. Ali lost three friends to gun violence in past years. (PSR at p. 6, ¶ 39). These deaths, combined with his

mother's disability and his grandmother's illness, created profound stress. (PSR at p. 6, ¶ 39). Since his incarceration, a medical provider diagnosed Mr. Ali with adjustment disorder with anxiety and prescribed hydroxyzine. (PSR at p. 6, ¶ 44).

Despite these obstacles, Mr. Ali possesses strong mitigating characteristics. He has abstained from alcohol and narcotics. (PSR at p. 7, ¶ 48). His sister described him as a good youth who fell into an unfortunate situation. (PSR at p. 6, ¶ 40). He volunteered at a mosque and provided childcare for his siblings' children. (PSR at p. 6, ¶ 40). Mr. Ali has also provided essential physical, emotional, and financial support to his mother and siblings, who heavily rely on his daily presence and care. (Shucayb Firin Ltr. at 2; Hamsa Ltr. at 1).

Following his release from custody, Mr. Ali intends to reside with his mother and provide her with physical care. (PSR at p. 5, ¶ 35; p. 6, ¶ 41). As her youngest child, Mr. Ali has served as a vital caregiver for his mother, who suffers from a physical disability caused by a bullet lodged in her back during the civil war in Somalia. (Hodan Abokar Ltr. at 1; Inaas Hassan Ltr. at 1).

*ii. Mr. Ali's offense*

On April 15, 2026, a jury convicted Mr. Ali of unlawful possession of a machinegun, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). (PSR at p. 1, ¶ 2). The offense conduct occurred on June 3, 2025. (PSR at p. 1, ¶ 2). Minneapolis police officers initiated a traffic stop on a vehicle in which Mr. Ali was seated in the

front passenger seat. (PSR at p. 1, ¶¶ 6–7). Following the removal of the occupants, officers located a Glock 29 Generation 5 pistol under Mr. Ali's seat. (PSR at p. 1, ¶ 8). The firearm was modified with an automatic conversion device (a "switch") and a loaded extended magazine. (PSR at p. 1, ¶ 8). Law enforcement determined the firearm had been reported stolen. (PSR at p. 2, ¶ 11).

Mr. Ali is deeply remorseful and understands the seriousness of his actions. (Ubah Fahiye Ltr. at 1; Hibaq Ali Ltr. at 1; Hodan Ali Ltr. at 2; Shucayb Firin Ltr. at 2). However, the Court must view Mr. Ali's conduct through the lens of his youth and his exposure to gun violence. Mr. Ali was eighteen years old at the time of the offense. (PSR at p. 4, ¶ 32). He had a criminal history score of zero, placing him in criminal history category I. (PSR at p. 3, ¶ 30). This matter represents his first felony conviction. (PSR at p. 11, ¶ 78). As noted in the Sentencing Guidelines policy statement regarding age, youthful individuals exhibit impulsivity, risk-seeking behavior, and susceptibility to outside influence. U.S.S.G. § 5H1.1. Mr. Ali's loss of three friends to gun violence compounded his youth and compromised his decision-making capabilities. (PSR at p. 6, ¶ 39). His actions represent a lapse in judgment driven by fear and trauma rather than an intent to commit additional criminal acts. Mr. Ali has reflected on his choices, takes responsibility for his actions, and is prepared to make better decisions moving forward as a law-abiding U.S. citizen. (Robin Blake Ltr. at 1; Nicolas Blake Ltr. at 1).

### C. The need for the sentence imposed.

Under 18 U.S.C. § 3553(a)(2), "the need for the sentence imposed" is divided into four subdivisions for the Court to consider: (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Each factor is addressed below.

#### *i. The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*

Just punishment does not mean the longest sentence possible; it means a sentence that is fitting for the crime Mr. Ali committed in light of who Mr. Ali is as a person. Just as importantly, it means a sentence that will come closest to accomplishing the many intersecting goals that are foundational to our criminal justice system. The need for retribution is measured by the degree of "blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (*mens rea*), motives, role in the offense, and mental illness or other diminished capacity." Richard S. Frase, "Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: 'Proportionality' Relative to What?," 89 *Minn.*

*L. Rev.* 571, 590 (Feb. 2005).

No one argues that Mr. Ali's crime was insignificant or deserving of a sentence that could easily be mistaken as "meaningless." However, a sentence of time served (17 months of incarceration), combined with three years of supervised release, is more than sufficient to satisfy the retributive aspect of sentencing. "Just" punishment is a holistic concept, and in order to accurately categorize a punishment as "just," this Court cannot overlook the collateral impact of Mr. Ali's convictions and sentences on Mr. Ali, as well as his family.

In addition to "the need to provide just punishment for the offense," another aim of sentencing under 18 U.S.C. § 3553(a)(2) is to promote respect for the law. Mr. Ali is young and was a mere teenager when he committed his offense. By the time of sentencing, he will have spent nearly 10 percent of his short life behind bars. He feels deep remorse for what he has done and is ready to lead a productive, law-abiding life. (Robin Blake Ltr. at 1; Nicolas Blake Ltr. at 1; Inaas Hassan Ltr. at 2). A federal sentence of more than 17 months would do nothing more to promote respect for the law—rather, it would merely be cumulative retribution. A sentence of time served plus supervised release would reflect the seriousness of the offense, promote respect for the law, and serve as a just punishment for Mr. Ali's actions.

*ii. The need to afford adequate deterrence to criminal conduct*

The need to afford adequate deterrence to criminal conduct contemplates not

only deterring the Defendant from committing future crimes but deterring others from committing similar offenses. However, research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, "Purposes and Functions of Sentencing," *34 Crime & Just.* 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*

Findings from the Institute of Criminology at Cambridge University bolster such conclusions regarding the notion of general deterrence. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999).[2] The report, commissioned by the British Home Office, examined criminal penalties in the United States, as well as in several European countries. *Id.* at 1. It examined the effects of changes to both the certainty and the severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "***correlations between sentence severity and crime rates… were not sufficient to achieve statistical significance.***" *Id.* at 2 (emphasis added). The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects."

[2] Summary available from U.S. DOJ, Office of Justice Programs, https://web.archive.org/web/20240626/https://www.ojp.gov/library/abstracts/criminal-deterrence-and-sentence-severity-analysis-recent-research, accessed Oct. 12, 2026.

*Id.* at 1. In fact, according to "the best available evidence…, prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al.,* "Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science," 91 *Prison J.* 48S, 50S-51S (2011). Hence, a sentence of no more than 87 months is more than sufficient to serve the purpose of deterring future crime.

*iii. The need to protect the public from further crimes of the defendant*

Title 18, section 3553(a)(2)(c) of the United States Code requires the Court to consider the need for the sentence imposed to protect the public from further crimes of the defendant. Mr. Ali poses a low risk of recidivism. He has a criminal history score of zero, which places him in criminal history category I. (PSR at p. 3, ¶ 30). He has no juvenile adjudications and no adult criminal convictions. (PSR at p. 3, ¶¶ 27–29). His prior interactions with the justice system include three minor traffic citations for driving offenses resolved by fines, and a pending trespass case in Dakota County, Minnesota. (PSR at p. 4, ¶ 31). Mr. Ali has never used illicit substances or consumed alcohol, removing a primary driver of criminal conduct. (PSR at p. 7, ¶ 48).

The PSR writer notes a suspected affiliation with a street gang, which law enforcement connects to recent firearm investigations. (PSR at p. 11, ¶ 78). The Court has adequate tools to manage this concern without resorting to a lengthy term of imprisonment. The probation office recommends a special condition of

supervised release prohibiting Mr. Ali from communicating or interacting with any known member of the Muddy street gang or any criminal street gang. (PSR at p. 12, ¶ 82). Strict enforcement of this condition will help isolate Mr. Ali from negative influences after his release into a stable environment. He intends to reside with his mother to provide her with physical care due to her disability. (PSR at p. 4, ¶ 35). This family obligation will ground him and limit his exposure to the circumstances that led to his current offense. A sentence anchored by stringent conditions of supervised release is sufficient, but not greater than necessary, to protect the public from future offenses.

*iv. The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner*

Title 18, section 3553(a)(2)(D) mandates consideration of the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Mr. Ali stands at the precipice of adulthood and requires focused educational and vocational development. (PSR at p. 11, ¶ 80). He demonstrated academic aptitude by overcoming childhood instability to earn a 3.85 grade point average and graduate from Penn Foster High School in June 2025. (PSR at p. 7, ¶ 49). He has the intellect and desire to pursue higher education in business or biology. (PSR at p. 8, ¶ 51). He had plans to attend college before his incarceration and can still do so at his young

age. (Inaas Hassan Ltr. at 1). Given his youth at the time of the offense, Mr. Ali does not have a lengthy employment history, although he did work for three months at a home care company before losing the position due to an automobile accident and a subsequent lack of transportation. (PSR at p. 8, ¶ 53). The PSR writer believes that Mr. Ali would benefit from education or vocational training during a term of supervised release. (PSR at p. 11, ¶ 80). Returning Mr. Ali to the community would allow him to enroll in collegiate programs, secure steady employment, and build a lawful, productive life. Further imprisonment would stall this critical developmental progress.

Regarding medical care, Mr. Ali has developed mental health needs requiring ongoing intervention. Following his incarceration at the Sherburne County Jail, a medical provider diagnosed Mr. Ali with adjustment disorder with anxiety and prescribed the medication hydroxyzine. (PSR at p. 6, ¶ 44). This diagnosis stems from a background fraught with severe trauma, including the deaths of three close friends due to gun violence, an adverse childhood experiences score of five, and the stress of caring for a disabled mother and an ailing grandmother. (PSR at p. 6, ¶¶ 39, 44–47). A community setting provides the most effective manner to deliver the comprehensive mental health treatment Mr. Ali requires. In the community, Mr. Ali can access dedicated trauma-informed therapy and maintain consistent access to his prescribed psychiatric medication. Extended incarceration would further disrupt

these rehabilitative efforts and exacerbate his mental health conditions. A sentence emphasizing supervised release will provide the necessary educational, vocational, and medical resources most effectively.

**D. A sentence of time served and three years of supervised release is sufficient, but not greater than necessary, to accomplish the goals of sentencing and avoid unwarranted sentencing disparities.**

The Congressional mandate to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct should guide this Court in fashioning an appropriate sentence for Mr. Ali. 18 U.S.C. § 3553(a)(6); *see Kimbrough*, 552 U.S. at 101. The push toward sentencing uniformity "does not consist simply of similar sentences for those convicted of violations of the same statute [but] consists, more importantly, of ***similar relationships between sentences and real conduct***." *Booker*, 543 U.S. at 253-54 (emphasis added).

The Eighth Circuit has limited its interpretation of § 3553(a)(6) to disparities among defendants who have committed similar offenses and who have been sentenced by the ***same court***. *See United States v. Harvey,* 890 F.3d 1130, 1133 (8th Cir. 2018) ("We have declined to require that a district judge 'must compare and contrast the defendant under consideration with a similar offender who has been sentenced by another federal judge.'") (quoting *United States v. Barron,* 558 F.3d 866, 860 (8th Cir. 2009)); *see also United States v. Soliz,* 857 F.3d 781, 783 (8th Cir.

2017) ("The sentencing practices of one district court are not a reference point for other courts").

In fact, most circuits interpret section 3553(a)(6) as requiring a national comparison of defendants and sentences. The Eighth Circuit's interpretation of section 3553(a)(6) is an outlier that stands in stark contrast to the manner in which the statute is construed by a majority of other circuits. For example, the Sixth Circuit has held that:

> '[s]ubsection 3553(a)(6) is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct…' This factor is designed to 'ensure nationally uniform sentences among like offenders.'

*United States v. Houston,* 529 F.3d 743, 752 (6th Cir. 2008) (quoting *United States v. Simmons,* 501 F.3d 620, 625 (6th Cir. 2007)) (emphasis in original).

The Eleventh Circuit has also acknowledged that "§ 3553(a)(6) is focused primarily on nationwide sentencing disparities." *United States v. Ronga,* 682 Fed.Appx. 849, 859 (11th Cir. 2017). The First, Second, Third, Fifth, Seventh and Ninth Circuits have also concluded that national uniformity is the appropriate analysis under which to construe 18 U.S.C. § 3553(a)(6). *See, e.g. United States v. Saez*, 444 F.3d 15, 18 (1st Cir. 2004) (Congress's "aim was almost certainly a *national* uniformity focusing upon a common standard and looking to how *most* cases of the same kind were treated.") (emphasis in original); *United States v. Fernandez,* 443 F.3d 19, 31–32 (2d Cir.2006); *United States v. Douglas,* 885 F.3d

145, n. 6 (3rd Cir. 2018); *United States v. Candia,* 454 F.3d 468, 476 (5th Cir. 2006); *United States v. Pisman,* 443 F.3d 912, 916 (7th Cir. 2006); *United States v. Paopao,* 736 Fed. Appx. 641 (9th Cir. 2018). Few cases in this Court or this district align with Mr. Ali's particular set of circumstances. Accordingly, national sentencing statistics may help the Court craft its sentence in this matter.

Under 18 U.S.C. § 3553(a), the Court must impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. (18 U.S.C. § 3553(a)). The advisory United States Sentencing Guidelines recommend a term of imprisonment of 33 to 41 months for Mr. Ali. (PSR at p. 8, ¶ 57). A sentence within this advisory range is far greater than necessary. Instead, the Defense requests a downward variance to a sentence of time served, which encompasses nearly seventeen months of continuous pretrial confinement, followed by a three-year term of supervised release. Such a sentence satisfies the statutory directives of retribution, deterrence, incapacitation, and rehabilitation while recognizing the mitigating circumstances of Mr. Ali's youth and traumatic background, as documented in the PSR and the many letters of support this Court has received.

Under 18 U.S.C. § 3553(a)(6), this Court must consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. Granting a variance to time served in this case

does not create an unwarranted disparity. The United States Sentencing Commission reports that for fiscal year 2025, 40 percent of sentences for convictions under 18 U.S.C. § 922(g) and similar firearms provisions included variances, with the vast majority being downward variances.[3] While Mr. Ali's conviction falls under 18 U.S.C. § 922(o), he shares the same primary sentencing guideline—U.S.S.G. § 2K2.1—as those offenders. (PSR at p. 2, ¶ 17). A downward variance is a common and appropriate outcome in federal firearms cases, particularly those involving simple possession. Further, Mr. Ali's circumstances are readily distinguishable from those of the average adult firearms offender. He is not a career criminal. His criminal history score is zero, and his prior interactions with law enforcement are minimal. (PSR at p. 3, ¶ 30; p. 4, ¶ 31). He was a traumatized teenager who made a grievous error in judgment while navigating an environment plagued by gun violence and the recent deaths of his peers. (PSR at p. 6, ¶ 39). Imposing a time-served sentence on a 20-year-old first-time offender recognizes these extraordinary contextual differences and honors the legal mandate of individualizing sentences.

A sentencing court has the authority to make its own reasonable application of the section 3553(a) factors and reject the advice of the Guidelines after due consideration. *Kimbrough*, 552 U.S. at 113 (Scalia, J., concurring). The Eighth

[3] United States Sentencing Commission, "Quick Facts: Section 922(g) Firearms Offenses," 2 (2025), available from https://www.ussc.gov/research/quick-facts/section-922g-firearms, last accessed Oct. 7, 2026.

Circuit Court of Appeals reviews a district court's decision to grant a variance under a deferential abuse-of-discretion standard, assessing whether the court committed a clear error of judgment in weighing the statutory sentencing factors. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (*en banc*). In conducting its analysis, the Court must evaluate the nature and circumstances of the offense alongside the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). A downward variance is appropriate and legally sound when the Guidelines fail to capture the highly individualized, mitigating nuances of a specific defendant's lived experience. The Supreme Court has clarified that the push toward sentencing uniformity requires similar relationships between sentences and real conduct, rather than identical sentences for all defendants convicted under the same overarching statute. *Gall*, 552 U.S. at 52.

The nature and circumstances of the offense support a variance. The offense conduct did not involve violence, brandishing, or discharging the weapon. (PSR at p. 1, ¶¶ 6–8). Officers located the firearm under Mr. Ali's passenger seat during a traffic stop. (PSR at p. 1, ¶ 8). While possessing a machinegun is undeniably serious, this static possession offense is distinguishable from cases involving the active use of firearms to facilitate drug trafficking or crimes of violence.

The most prominent distinguishing factor in this matter is Mr. Ali's extreme youth at the time of the offense. Mr. Ali was eighteen years old at the time of the

offense. (PSR at p. 4, ¶ 32). He is currently 20 years old. (PSR at p. 4, ¶ 35). The Supreme Court has repeatedly recognized that youthful offenders have diminished culpability and heightened prospects for reform because a lack of maturity and an underdeveloped sense of responsibility often lead to impetuous and ill-considered actions. *Roper v. Simmons*, 543 U.S. 551, 569 (2005). The Sentencing Commission explicitly incorporated this principle into its 2024 policy statements, recognizing that a downward departure or variance may be warranted because youthful individuals are impulsive, risk-seeking, and susceptible to outside influence as their brains continue developing into young adulthood. U.S.S.G. § 5H1.1. The Commission further instructs courts to consider external risk factors that uniquely affect youthful development and contribute to involvement in the criminal justice system, including adverse childhood experiences, familial relationships, and environment. U.S.S.G. § 5H1.1.

Mr. Ali's has been subjected to several of the factors identified by the Sentencing Commission. He endured physical abuse and severe neglect perpetrated by an alcoholic father. (PSR at p. 5, ¶ 36). Following his parents' separation when he was seven years old, he experienced housing instability across multiple states and struggled with food insecurity. (PSR at p. 5, ¶ 37). He suffered the trauma of losing three adolescent friends to gun violence in recent years. (PSR at p. 6, ¶ 39). His adverse childhood experiences score of five reflects an upbringing saturated in

household dysfunction, violence, and instability. (PSR at p. 7, ¶ 47). A standard Guidelines sentence of 33 months would punish an eighteen-year-old for poor decision-making without acknowledging the immense weight of this trauma or the scientific consensus regarding adolescent brain development. Punishing Mr. Ali with an extended prison term ignores the well-established age-crime curve and his heightened amenability to rehabilitation. U.S.S.G. § 5H1.1. A variance to time served accounts for Mr. Ali's diminished culpability as a traumatized teenager.

The nearly 17 months of incarceration that Mr. Ali has already served fully satisfies the statutory need for retribution and deterrence. 8 U.S.C. § 3553(a)(2)(A)–(B). Mr. Ali has remained in continuous custody at the Sherburne County Jail since June 9, 2025. (PSR at p. 4, ¶ 34). He had no juvenile adjudications or adult criminal convictions before this arrest. (PSR at p. 3, ¶¶ 27–29). For a nineteen-year-old first-time offender, 17 months in a local detention facility constitutes a massive deprivation of liberty. Pretrial detention in county jails entails restrictive, isolating, and punitive conditions that often exceed the severity of sentences served in designated Bureau of Prisons facilities. This prolonged incarceration has forced Mr. Ali to reflect on the gravity of his actions. Empirical research consistently shows that increases in punishment severity do not yield significant marginal deterrent

effects.[4] The certainty of being caught and punished deters criminal conduct far more effectively than the ultimate severity of the resulting sentence.[5] Mr. Ali has experienced the certainty of punishment through his arrest, federal prosecution, and extended confinement. Imposing an additional 16 to 24 months of incarceration would transition this sentence from one of just punishment into one of gratuitous harm, yielding no further deterrent value while actively damaging his prospects for reintegration.

A sentence of time served, reinforced by a three-year term of supervised release, protects the public and provides Mr. Ali with required correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(C)–(D). Continued imprisonment isolates Mr. Ali without addressing his developmental and emotional needs. Conversely, supervised release provides a highly structured environment that facilitates community monitoring and rehabilitation. The PSR writer recommends a special condition of supervised release prohibiting Mr. Ali from communicating or interacting with any known member or prospect of the Muddy street gang or any other criminal street gang. (PSR at p. 12, ¶ 82). This condition, combined with the mandatory condition subjecting his person, residence, and vehicle to search upon reasonable suspicion, provides the Court and U.S. Probation formidable tools to

---

[4] National Institute of Justice, "Five Things About Deterrence," 1 (2016), available from https://nij.ojp.gov/topics/articles/five-things-about-deterrence, last accessed Oct. 7, 2026.
[5] *Id.*

address any potential risk to public safety. (PSR at p. 12, ¶ 83). These oversight mechanisms ensure Mr. Ali remains insulated from the negative peer influences that contributed to his possession of the machinegun.

Releasing Mr. Ali to supervision would allow him to capitalize on his academic momentum and address his mental health conditions in a community setting. Despite his chaotic upbringing, Mr. Ali demonstrated remarkable resilience by earning a 3.85 grade point average and graduating from Penn Foster High School in June 2025. (PSR at p. 7, ¶ 49). He holds a genuine interest in pursuing higher education in business or biology. (PSR at p. 8, ¶ 51). A return to the community would allow Mr. Ali to enroll in collegiate coursework and begin developing a sustainable career path, which is as a primary protective factor against recidivism. Mr. Ali will assume a supportive domestic role upon his release. He plans to reside with his mother, who suffers from a severe physical disability caused by a gunshot wound to her back, to provide her with physical care. (PSR at p. 4, ¶ 35; p. 5, ¶ 35; p. 6, ¶ 41). This familial responsibility provides him with immediate, lawful purpose. Finally, transitioning to the community ensures Mr. Ali can receive specialized therapy for his recently diagnosed adjustment disorder with anxiety and maintain access to his prescribed psychiatric medication, hydroxyzine. (PSR at p. 6, ¶ 44). Trauma-informed mental health care is best delivered by community providers

rather than within the confines of a penal institution.[6] As such, a sentence of time served followed by three years of supervised release would be more than sufficient, but not greater than necessary, to satisfy the statutory goals of sentencing.

## CONCLUSION

A mechanical application of the 33- to 41-month advisory Guidelines range fails to account for Mr. Ali's youth, his lack of prior criminal convictions, the significant trauma he has endured, and the severe impact of the nearly seventeen months he has already spent in pretrial confinement. The Defense requests that this Court apply the 18 U.S.C. § 3353(a) parsimony clause and grant a downward variance. A sentence of time served, followed by three years of supervised release subject to the strict conditions recommended by the PSR, is sufficient, but not greater than necessary, to reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide Mr. Ali with the correctional treatment he requires to build a lawful and productive future.[7]

---

[6] *See* Crole-Rees, C., Tomlin, J., Kalebic, N., et al. (2024). An optimal trauma-informed pathway for PTSD, complex PTSD and other mental health and psychosocial impacts of trauma in prisons: an expert consensus statement. *Psychology, Crime & Law*, 1–22. Available from https://doi.org/10.1080/1068316x.2024.2394807, accessed Oct. 12, 2026.

[7] In the event this Court disagrees and sentences Mr. Ali to further imprisonment, Mr. Ali requests that the Court recommend he be designated to FCI Sandstone so that he can remain close to his family and support network.

Respectfully submitted,

**HALBERG CRIMINAL DEFENSE**

Dated: October 14, 2026

*/s/ Eric J. Nelson*
Eric J. Nelson, No. 308808
Attorney for Defendant
7900 Xerxes Ave. S., Ste. 1700
Bloomington, MN 55431
(612) 333-3673

Dated: October 14, 2026

*/s/ Julia A. Forbes*
Julia A. Forbes, No. 392853
Attorney for Defendant
7900 Xerxes Ave. S., Ste. 1700
Bloomington, MN 55431
(612) 333-3673